The first case for argument this morning is 14-7024 Grimsley v. McDonald. Mr. Carpenter, welcome. Kenneth Carpenter, appearing on behalf of Mr. Grimsley. At issue in this appeal is the rating of Mr. Grimsley's service-connected disability for post-traumatic stress disorder in excess of 50% for a period beginning September 2008 to the present. In this case, the board made a finding that merely listed Mr. Grimsley's symptoms. We believe that the listing of symptoms is simply not sufficient to meet the requirements of 4.103, the general rating criteria for mental disorders. The summary way in which the board handled those symptoms is at odds with the decision of the Veterans Court in Mallahan and with this court's decision in Vasquez-Claudio. Under the correct interpretation of 4.130, more than a mere conclusion that the veteran's post-traumatic stress disorder does not merit a rating in excess of 50% is required. But, I mean, it seems to me the focus of your argument is that the board didn't consider the frequency, severity, and duration. That's correct. But, you know, going through the decisions, it seems as if they did. Now, they may have not done so in the level of detail that you think was warranted, but they did. So if you're asking us to decide this case to look at what they said and find out whether the level of their consideration was sufficient, that seems very much to be a law-on-facts question and not purely a legal question. So why am I wrong? Well, I believe you're wrong, Your Honor, in your assessment of what the board did. We do not believe that the board did consider frequency, duration, and severity in relationship to establishing the severity of the impairment. To the contrary, they simply stated the beginning point of their examination and inferred that these symptoms, as noted, were at the same level of frequency, duration, and severity during that entire period. What is required by this court's decision in Vasquez-Claudio is an analysis that relates those three criteria under 4.126 to determine the level of severity. In other words, the level of severity is based upon how the board analyzes the relationship between those three criteria, severity, duration, and frequency. I'm not sure what that really means. I mean, the board did look at the symptoms and say, and then look at how they were acting out in his life, and it made various, it drew various conclusions or at least made findings about the effect on his social relationships and on his work and his interaction and his performance of routine activities. So is that what they're supposed to do? No, Your Honor. What they're supposed to do is to not merely list those but to describe them through the lens of 4.126, which is how frequent are those symptoms, how severe are those symptoms, and what has been the duration of those symptoms. In this case, which began with, I believe, an initial rating in early 2000, you have a continuum of a period of more than a decade to be analyzed and to analyze those under the lens that is described in Vasquez-Claudio. That lens requires an analysis that relates the effects of the symptoms to determine the level of impairment. They simply declared the level of impairment was not met. More is required by this Court's analysis and interpretation of 4.130 in Vasquez-Claudio. What is required under that holding is an analysis of the particular symptoms associated with the rating criteria as well as the symptoms of record in the context of their severity, frequency, and duration. Merely listing that those symptoms were present, and that's all that the Board did was to list those as being present. Well, no, they did more than say the list of the present. They talked about how those symptoms impacted his routine activities and his life and concluded that they did not, in many instances, do that. That's what they're supposed to do, right? Well, Your Honor, with respect, I do not believe that that's what they did, as mandated by both the regulation and by this Court's interpretation of that regulation and by the lower Court's interpretation in order to be able to understand how those symptoms and manifestations were considered through the specific lens. In other words, their own regulation mandates and obligates the VA to look to frequency. They did not describe how often these things happened. They described various, if you will, snapshots from the medical records of when those symptoms were identified. They did not talk about the severity of those symptoms in terms of any comparison, for instance, between the earlier period in which they determined that he was entitled to a rating for 30% and the period in which they decided he was only entitled to an evaluation of 50%. Nor did they look at the duration of these symptoms. As they began their analysis, it simply began with, from this point forward. They made no analysis, as I believe is required and mandated by this Court's interpretation in Claudio Vasquez, for a specific consideration through the lens or through the analysis of the frequency, severity, and duration of the psychiatric symptoms that are present. They simply listed those symptoms as were revealed in the medical records and made no attempt to relate those to the criteria. There is no reference in the Board's decision to frequency, duration, or severity. They simply do not use the terminology that is mandated by their own regulation. Without that, we believe that that simply does not comply with the requirements that are mandated by their own regulations as have been interpreted by this Court. Unless there are further questions, I will reserve the balance of my time for rebuttal. Thank you. Good morning, Ms. Giovanni. I would like to talk about the actual Board determination and the findings that the Board determination made. I would like to point the Court to, for example, an avoidance. This was one of the symptoms that was mentioned in Mr. Grimsley's reply brief. We have the avoidance of others, which Your Honor can find discussion of the doctor's evaluations from the beginning of the time period to the present time period, JA-67, JA-85, 86, 87, and 88. I will provide some specific examples. JA-85, the Board stated that the record reflected a lot of denial and avoidance. JA-87, Mr. Grimsley occasionally had to leave groups when affected by a PTSD trigger. JA-87, Mr. Grimsley still tried to avoid conflict by walking away at times, but generally got along well with others. Well, if you heard Mr. Carpenter saying that the Board didn't analyze how often, the severity of the symptoms, how often they occurred, is it your view that they didn't have to do that or that they, in fact, did that? Both. I would say they did that. They did that in the context of their 4.130 analysis, as we stated. But also, they did that explicitly. They occasionally had to leave groups. He still, throughout the period, tried to avoid conflict by walking away at times. And in the context, as Your Honor noted, in the context of the effects, that is looking at the frequency, severity, duration. The Board analyzed avoidance that Mr. Grimsley was suffering for that entire period, for several pages, from 83, as I stated, 83 to JA-88. I mean, it looked at his, during the points of time, the frequency, severity, and duration of his avoidance, for example. Another symptom that was mentioned by Mr. Grimsley was anger and irascibility. Your Honor can find mentions of the Board and discussion of the Board in JA-67, JA-84, 85, 87, and 88. For example, some of the examples, JA-84, that Mr. Grimsley denied having angry outbursts, but he was JA-85 irritable most of the time. And JA-87 mentioned his occasional irritation with his wife with guilt afterwards. And there are several instances of the Board analyzing symptoms that Mr. Grimsley had, anxiety, poor concentration, hypervigilance. I could go on and tell Your Honors exactly where the Board analyzed the frequency, severity, and duration. And that's explicit. But also, in evaluating the symptoms themselves and where they fit in the spectrum and the effects of those symptoms in the spectrum, also evaluate the frequency, severity, and duration of the symptoms. For example, on the symptoms, you have a continuum. In 50 percent, you have disturbances of mood. And then you get to 70 percent, you have frequent, I believe, ongoing or almost consistent anxiety and panic. So where Mr. Grimsley's symptoms fall on that spectrum, necessarily look at the frequency, severity, and duration of those symptoms. Also, and by looking at the effects those symptoms have, it tells you that the frequency, severity, and duration is showing the effect those symptoms had on Mr. Grimsley's life. And I can tell you that the Board will give you instances in which the Board looked at the social, and occupational effects that Mr. Grimsley was suffering. And that is what was required under Vasquez-Claudio. There are two things that were required under Vasquez-Claudio. First, this Court stated that the symptoms are what guided the decision. The symptoms could not just be any symptoms and then show that they were under 70 percent affected his life under most areas. Also, it required a finding as to the effects of those symptoms on his social and occupational functioning. That was also done by the Board. Looking at Marahan as well, Marahan was a decision by the Veterans Court that rejected the veterans' argument that because it was PTSD that the veteran was suffering from, that instead of looking at the 4.130 broad requirements, that instead it was required to look at the manual for PTSD. But the Veterans Court rejected that and said the Board is required to look at the 4.130 categories, but that could consider the manual. But also could not use the language used in the 4.130 and those symptoms to use them as a checklist. That is what the Veterans Court looked at and said, no, that is not what the Board did in this case. The Board did not just look at it as a checklist. It discussed other symptoms that Mr. Grimsley was suffering from. Again, that satisfies the reminder of 4.126A, which the VA stated was we are to consider the frequency, severity, and duration in our decision and in developing our disability levels for benefit purposes. I would like to go to Judge Crow's first point, which was the fact that this is in the end a challenge to the reasons and bases of the Board's decision. This is a decision outside this Court's jurisdiction. What Mr. Grimsley is taking issue with is not the interpretation of 4.130. It is not the interpretation of Marahan and Vasquez-Claudio. What Mr. Grimsley is arguing is that the Board did not sufficiently evaluate the symptoms. He disagrees with the way the Board made its analysis, and that is a pure application of law to fact and outside this Court's jurisdiction. If there are any other questions, we respectfully request that the Court dismiss this appeal for lack of jurisdiction or, in the alternative, affirm the judgment of the Veterans Court. Thank you. I would like to direct the Court's attention to page 86 of the Joint Appendix. This is from the Board's decision. In the Board's decision, it talks about the VA examination, which concluded that the effects of the Veterans' Disability... I'm sorry, page 86, which paragraph? Page 86. Is it the second paragraph? I'm quoting it from my brief. I'll get the paragraph for you. It is... I'm on 87. The last full paragraph that begins the effects of the Veterans. Got it. The effects of the Veterans' Disability on his occupational and social functioning indicate as from, quote, total to minimal in most areas, including areas of employment, family, social and interpersonal relations, and recreational and leisure activities. The examiner indicated that these obsessive effects primarily affect his social life, limiting his recreational time, social friends, and his relationship with his children. This also limited his effectiveness at work in terms of his ability to assist other Veterans who are dealing with combat-related issues. This also included the need to leave the setting when reminded of combat experiences, which also coincide with an increase in his symptoms. The Veterans' efforts to control his mental health issues also interfere with his ability to obtain adequate treatment. The rating criteria for 70% is when it affects most areas. The only way to determine whether a 50% rating or a 70% rating should be assigned is to look at this from the perspective of frequency, duration, and... severity, excuse me. I lost it. That analysis was not applied by the board as required. They simply listed what the examiner said, and they didn't apply the next level to determine the level of severity. And here we have the typical circumstance in which the board or the agency must choose from one rating or the next higher rating. In this case, the next higher rating's specific rating criteria is when it affects most areas. We have that specific language used by the VA examiner and then ignored by the board because they didn't take the step that was necessary to analyze that evidence in terms of its frequency, severity, or duration. Had they done so, then they would have been correctly interpreting the provision. They did not do so, and the Veterans Court below affirmed on the basis... Isn't that precisely an application of law to the facts argument, though? Not in this case, Your Honor, because the lower court specifically said that holding the rule in Mauerham and the rule in Vasquez Claudio were not violated. That was a legal determination. In making that legal determination, that implicates this court's jurisdiction to determine whether that was correct. Because these are the legal standards to be applied when you are applying 4.130. You have to apply that legal standard. The effect of the decision below is to say to the board that no, you don't need to do that. This is the perfect example of why the isolated examples identified by the government in its presentation to the court simply don't rise to the level of using the correct legal standard. Can I say something? Yes, sir. At the bottom of JA 90 up to the top of 91, the board, having recited for many, many pages the examiner's findings, including the one that you read, says the board concludes that the veteran's PTSD did not manifest with various deficiencies in most areas, and it goes on about positive rather than negative aspects of the evaluation. Why doesn't that, while not using the three words that you focus on, constitute the fulfillment of the obligation to apply that standard? Because it is a mere conclusion, Your Honor, and a mere conclusion is not sufficient. What this court said in Vasquez-Claudio was that in order to correctly interpret 4.130, you had to read it together with 4.126, and 4.126 is what gives the vitality, if you will, to the degree of impairment. You understand the impairment by examining the effects of the impairment, not simply by making a declaration or a conclusion. Your Honor correctly points out that all the board did was to simply conclude that the veteran's PTSD did not manifest deficiencies in most areas. That's not what's contemplated by either the regulation in the main in 4.130 or by the additional reading to understand 4.130 mandated by this court in Vasquez-Claudio. Unless there's further questions from the panel. Thank you very much for your time, Your Honor.